(January 27, 1917.)

# V. F. NETTLETON, Respondent, v. J. F. COOK, as Administrator of the Estate of ROBERT E. NEITZEL, Deceased, Appellant.

[163 Pac. 300.]

MALICIOUS PROSECUTION — PROBABLE CAUSE — PROSECUTION UNDER WRONG STATUTE AND DISCHARGE—ACTUAL COMMISSION OF CRIMINAL OFFENSE.

1. In an action for malicious prosecution, probable cause, as a basis for instituting the prosecution complained of, is the existence of such facts or circumstances as would excite the belief in a reasonable person, acting on the facts within the knowledge of the prosecutor, that the one charged was guilty of the crime for which he was prosecuted.

2. Where plaintiff in an action for malicious prosecution shows that he was discharged by the committing magistrate after the holding of a preliminary examination, such discharge is *prima facie* evidence of want of probable cause but is not conclusive; and if it appears affirmatively from evidence introduced upon the trial that he was in fact guilty of an indictable misdemeanor, although not the one for which he was attempted to be held for trial, but of an indictable misdemeanor which was so closely akin thereto that the county attorney in drafting the criminal complaint inadvertently charged the defendant under the wrong section of the statute, want of probable cause is thereby rebutted, and the prosecutor cannot be held in damages.

3. In an action for malicious prosecution, the fact that the plaintiff was not charged in the prosecution complained of under the proper statute with the commission of a criminal offense, is not evidence of bad faith or malice on the part of the prosecutor, if the latter had reason to believe the accused guilty of a crime, and such belief was based either upon personal knowledge or information received from others, upon which he relied in good faith, and such facts had been communicated to the county attorney.

4. *Held,* under the facts of this case, that as it affirmatively appears from the record, and from respondent's own testimony, that he was guilty of a criminal offense against the laws of the state, but through inadvertence was charged under the wrong statute without any fault on the part of Neitzel, he cannot be permitted to maintain this action for malicious prosecution.

[As to acquittal in criminal prosecution as evidence, in action for malicious prosecution, of want of probable cause, see note in **Ann. Cas. 1916E, 376.**]

APPEAL from the District Court of the Third Judicial District, for Owyhee County. Hon. Charles P. McCarthy, Judge.

Action to recover damages for malicious prosecution. Motion for nonsuit denied. Judgment for plaintiff. *Reversed.*

Barber & Davison, for Appellant.

If the appellant had reasonable cause to believe, and did believe, that respondent had violated the law in the destruction of or interference with the headgate of the Murphy Land & Irrigation Co., notwithstanding the action of the probate court in refusing to hold respondent to the district court, the evidence did not sustain the verdict, and did not entitle respondent to recover any sum in this cause. (*Russell v. Chamberlain,* 12 Ida. 299, 303, 9 Ann. Cas. 1173, 85 Pac. 926; *Potter v. Seattle,* 8 Cal. 217, 221; *Grant v. Moore,* 29 Cal. 644, 656; *Anderson v. Coleman,* 53 Cal. 188; *Vesper v. Crane Co.,* 165 Cal. 36, 130 Pac. 876, L. R. A. 1915A, 541.)

Appellant had taken every reasonable precaution and had conducted himself as a reasonable and cautious man would conduct himself by laying before the public prosecutor, a constituted authority, the facts as given him, bringing himself clearly within the authorities defining probable cause. (26 Cyc. 24, and cases cited; *Smith v. Liverpool etc. Ins. Co.,* 107 Cal. 432, 433, 40 Pac. 540; *Davis v. Pacific Tel. & Tel. Co.,* 127 Cal. 312, 57 Pac. 764, 59 Pac. 698.)

And the question does not turn upon the actual innocence or guilt of the accused, but upon the prosecutor's belief at the time upon reasonable grounds. (*Burlingame v. Burlingame,* 8 Cow. (N. Y.) 141; *French v. Smith,* 4 Vt. 363, 24 Am. Dec. 616; *Foshay v. Ferguson,* 2 Denio (N. Y.), 617.)

If one submits his case to counsel and in good faith receives advice justifying a prosecution, and acting on that advice institutes the prosecution, he is entitled to immunity from damages. (26 Cyc. 16, 32; *Sandell v. Sherman,* 107 Cal. 391, 40 Pac. 493; *Struby etc. Mercantile Co. v. Kyes,* 9 Colo. App.

190, 48 Pac. 663; *Staunton v. Goshorn,* 94 Fed. 52, 36 C. C. A. 75; *Johnson v. Southern Pac. Co.,* 157 Cal. 333, 107 Pac. 611.)

Perky & Crow, for Respondent.

No one has the right to cause the arrest of another as an experiment, and an arrest under such circumstances is malicious. (*Johnson v. Ebberts,* 11 Fed. 129, 6 Saw. 538.)

"Malice may be presumed not only from the total absence of probable cause, but also from gross and culpable negligence in omitting to make suitable inquiries." (26 Cyc. 51.)

"To justify by advice of counsel defendant must show that he or his prosecuting agent truthfully and correctly, fully and fairly and in good faith stated to such counsel all the facts bearing upon the guilt or innocence of the accused." (26 Cyc. 34.)

Before the prosecutor can rely upon the advice of counsel as a defense, it must be shown not only that he fully and fairly stated all of the facts in his possession concerning the offense, but he must have stated all facts of which he had been put upon inquiry. (*Flikkie v. Oberson,* 82 Minn. 82, 84 N. W. 651; *Atchison, T. & S. F. R. Co. v. Brown,* 57 Kan. 785, 48 Pac. 31; *Whitehead v. Jessup,* 2 Colo. App. 76, 29 Pac. 916; *Jeremy v. St. Paul Boom Co.,* 84 Minn. 516, 88 N. W. 13; *Dawson v. Schloss,* 93 Cal. 194, 29 Pac. 31; *Steed v. Knowles,* 79 Ala. 446; *Norrell v. Vogel,* 39 Minn. 107, 38 N. W. 705; *Willard v. Holmes etc.,* 2 Misc. Rep. 303, 21 N. Y. Supp. 998; *Leahey v. March,* 155 Pa. St. 458, 26 Atl. 701; *Barhight v. Tammany,* 158 Pa. St. 545, 38 Am. St. 853, 28 Atl. 135; *Flora v. Russell,* 138 Ind. 153, 37 N. E. 593; *Cointement v. Cropper,* 41 La. Ann. 303, 305, 6 So. 127.)

BUDGE, C. J.—This is an action to recover damages for an alleged malicious prosecution. The material facts out of which this litigation arose, briefly stated, are as follows; several years prior to the commencement of this action the Murphy Land & Irrigation Company, Limited (which will hereafter be referred to as the "Water Company"), con-

structed a dam across Sinker Creek in Owyhee county, for the purpose of impounding the natural flow of the waters of that stream. Prior to the construction of this dam a portion of the waters of Sinker Creek had been appropriated and used by settlers along the stream. For the purpose of determining the relative priorities of the various claimants an action was instituted in the district court for Owyhee county by Matthew Joyce et al. against the Water Company, which was pending at the time the controversy herein related occurred. During the pendency of this suit the Water Company had agreed with the other claimants to turn into the bed of the stream below the dam the same quantity of water that was entering the reservoir by means of the channel of Sinker Creek.

The respondent in this action was in charge of the Joyce ranch, which was among the other claimants above mentioned. Neitzel at the time of the controversy was, and had been for some time prior thereto, the secretary and treasurer of the Water Company, and was also general manager of the dam and reservoir. An employee of the Water Company, Martin M. Welch, was in immediate charge of the dam and reservoir and controlled the various headgates and canals.

A dispute arose between respondent and Welch in regard to the amount of water that was being released by the Water Company under its agreement. The respondent contending that something over 600 miner's inches was running into the reservoir and that no such quantity was being permitted to flow out of the reservoir into the creek below. And he thereupon took possession of the dam and turned a considerable quantity of water into the creek, so that it would proceed to the Joyce ranch. There is a decided conflict in the evidence as to whether or not Welch objected to respondent's conduct in increasing the flow of water into the creek. However, there is no conflict in the evidence that later Welch readjusted the gate and placed a chain and padlock upon it, which the respondent, after a more or less serious controversy with Welch, broke with an iron bar, raised the gates and permitted a large quantity of water to escape from the reser-

voir into the creek. Nor is it disputed that respondent stood guard over the dam until far into the succeeding night and would not permit Welch to adjust the gates until some temporarily satisfactory arrangement was made.

After Neitzel stated these facts, communicated to him by Welch, to the county attorney of Owyhee county, the latter informed him that it would be necessary to determine whether or not a criminal action would lie, and for that purpose he desired time to look into the question. Shortly thereafter he telephoned Neitzel and informed him in effect that the respondent was guilty of an indictable misdemeanor. It was thereupon arranged by Neitzel and the county attorney that a criminal complaint be sworn to by the county attorney, which was done, and a warrant was thereupon issued out of the probate court and later served upon the respondent, who subsequent thereto appeared in said court, where at the date fixed a preliminary examination was held, at which time the depositions of the witnesses offered on behalf of the state were taken. The probate court, sitting as a committing magistrate, after hearing all the testimony offered by the state, discharged the respondent. Thereafter this action was brought in the district court of the third judicial district for Owyhee county, to recover damages for a malicious prosecution, which resulted in a verdict in favor of respondent.

Neitzel, however, offered no testimony but at the conclusion of respondent's case made a motion for a nonsuit upon numerous grounds, which motion was overruled and the case submitted to the jury, a verdict was rendered in favor of respondent and judgment entered thereon. This is an appeal from the judgment thus entered.

It is urged that the court erred in denying Neitzel's motion for a nonsuit. Under this assignment of error we think may be properly determined whether in this action the respondent here, the plaintiff below, affirmatively shows that there was a want of probable cause, in the absence of which, malice being present, this action may be maintained. (*Crescent City Livestock etc. Co. v. Butchers' Union, etc. Co.*, 120 U. S. 141, 7 Sup. Ct. 472, 30 L. ed. 614; *Harkrader v. Moore*, 44 Cal. 144;

*Gonzales v. Cobliner*, 68 Cal. 151, 8 Pac. 697; and other cases cited in note, 4 L. R. A. 259.)

If we understand counsel's contention correctly, they insist that the respondent was charged in the probate court with the infringement of the provisions of the second paragraph of sec. 7146, Rev. Codes, or, in other words, that the respondent was charged with "disturbing" a headgate, which was "regulated by the duly authorized agent of the Murphy Land & Irrigation Company, Limited, . . . . and used and to be used for the measurement of water." Of the commission of this offense he was, by the committing magistrate, discharged, which being true, there existed *prima facie* evidence of want of probable cause. The fact that the respondent was discharged by the committing magistrate, however, is not conclusive so far as the question of probable cause is concerned—that is to say, if it appears affirmatively from the facts introduced upon the trial that he was in truth and in fact guilty of an indictable misdemeanor, although under a different statute, even though Neitzel acted with malice, still there would not be an absence of probable cause. The fact that the respondent was not charged under the proper statute with the commission of a criminal offense would furnish no evidence of bad faith in Neitzel if he believed, and had reason to believe, the respondent guilty of a crime, and such belief was based upon personal knowledge, or information received from others upon which he honestly and in good faith relied.

Probable cause has been defined as "the existence of such facts or circumstances as would excite the belief of a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." It must be conceded that the proof conclusively shows that Welch communicated with Neitzel over the telephone, and informed him of the fact that the respondent went upon the dam, broke the lock, interfered with the headgate, and discharged a large flow of the water out of the reservoir into Sinker Creek, and was holding possession of the works. We think the record clearly shows Neitzel to have been in possession of knowledge of the exist-

ence of such facts and circumstances as would excite the belief in a reasonable mind that the respondent had committed a crime, although the exact nature thereof, or the particular statute under which the prosecution would lie, may not have been known to him.

An examination of the record discloses the fact that the respondent, in relating the incidents of the dispute between himself and Welch, testified that he went upon the dam and found the headgate locked with a padlock and that he broke the lock with a big iron bar; this testimony is as follows:

"Q. How did you break that lock? What did you use?

"A. A big bar of iron, put it inside the chain and lock and pried it open.

"Q. A padlock?

"A. Yes, a padlock and chain around the standard of the wheel, I broke that and opened the headgate and let the water down the creek. . . . . "

The query therefore arises: Did the respondent by breaking the lock of the headgate commit a crime? As the case stood at the time the motion for a nonsuit was made, it had been clearly established by the undisputed facts in evidence on the part of the respondent, that the headgate, which had been damaged and interfered with by the respondent, was appurtenant to the dam used by the Water Company for the purpose of storing water and distributing the same to the water users under its canal system, for a beneficial use. Clearly, the act of the respondent in breaking the padlock and interfering with the headgate was a violation of sec. 7145, Rev. Codes, which provides: "Any person or persons who shall cut, break, damage, or in any way interfere with any ditch, canal, headgate, or any other works in or appurtenant thereto, the property of another person, corporation, or association of persons, and whereby water is conducted to any place for beneficial use or purposes, and when said canal, headgate, ditch, dam, or appurtenances are being used or are to be used for said conduct of water, shall be guilty of an indictable misdemeanor." Not only did Neitzel have reason to believe that the respondent had committed a misdemeanor, but a misde-

meanor had actually been committed by the respondent. This being true, Neitzel could not be held to answer in damages, even though through mistake the respondent may not have been charged in the criminal complaint under the proper section of the statute. Respondent's violation of the above section is not only shown by his own admissions, but is abundantly proven by all the facts and circumstances appearing upon the trial of this case. While it may be conceded that respondent was charged under sec. 7146, Rev. Codes, when he should have been charged under sec. 7145, Rev. Codes, nevertheless the fact that the county attorney prosecuted the respondent under the statute which failed to technically describe and identify the offense that he had committed, does not rebut the fact that a crime had been committed. It affirmatively appearing that the respondent was guilty of a criminal offense, he cannot successfully maintain this action for malicious prosecution. (*Adams v. Lisher,* 3 Blackf. (Ind.) 241, 25 Am. Dec. 102; *Threefoot* v. *Nuckols,* 68 Miss. 116, 8 So. 335; *Parkhurst v. Masteller,* 57 Iowa, 474, 10 N. W. 864; and other cases cited in 26 Cyc. 26, note No. 63.) As stated in the case of *Sears v. Hathaway,* 12 Cal. 277:

"A party who stands before a jury in such a case as this, on pure technical law, for a defense against an act of moral turpitude, and claiming a discharge because his prosecutor has not pursued a statutory mode of proof to convict him of a crime punishable by the statute, may congratulate himself that the precautions of the law have availed him to escape its merited penalty; but he certainly ought not to have, in addition to this immunity, a right to claim a small fortune from his victim for having mistaken the remedy, or not been as well versed as himself in the technicalities which sometimes shield guilt from public justice."

See, also, *McNulty v. Walker,* 64 Miss. 198, 1 So. 55; *Ruffner v. Hooks,* 2 Pa. Super. Ct. 278; *Lancaster v. McKay,* 103 Ky. 616, 45 S. W. 887; *Newton v. Weaver,* 13 R. I. 616.

There are numerous errors assigned by appellant other than the one herein discussed, which we think are in the main meritorious, but in view of the fact that it is so patent from

the undisputed facts in evidence that Neitzel did not procure respondent's arrest or maintain his prosecution without probable cause, we have confined our discussion chiefly to this one assignment. It clearly appears from the evidence in the record that the respondent, conceding the idea which may or may not have been a fact, that he was entitled to a greater flow of water to be used upon the Joyce ranch than he was receiving, assumed the right to take the law into his own hands and go upon the works of the Water Company and with force and such violence as was necessary break the lock of the headgate, remove the chain, and proceed, in total disregard of the rights of others, to help himself to such water as he thought he was entitled to. Whether he was entitled to this water or how much he was entitled to, so far as this action is concerned is immaterial. The relative priorities of water claimants upon this stream could not be determined in this manner, but could only have been determined in the manner provided by law.

The action of the district court in denying Neitzel's motion for nonsuit is reversed and the cause remanded, with instructions to the trial court to sustain the motion and dismiss the case. Costs awarded appellant.

Morgan and Rice, JJ., concur.