Argued March 1; reversed April 11; rehearing denied May 23, 1944

# KUHNHAUSEN *v.* STADELMAN

(148 P. (2d) 239, 149 P. (2d) 108)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*W. Y. Masters* and *Eugene Brookings,* both of Portland, for appellant.

*A. I. Bernstein,* of Portland (Cookingham & Hanley, of Portland, on the brief), for respondent.

LUSK, J. This is an action to recover damages for malicious prosecution. The plaintiff had a verdict and judgment and the defendant has appealed.

As one ground of reversal it is contended that the complaint does not state a cause of action. The defendant did not demur to the complaint, and the question was raised for the first time on the trial by objections to the evidence and, later, by motions for a nonsuit and directed verdict. The argument is, that the foundation for the action of malicious prosecution

is a criminal proceeding in a court having jurisdiction of the alleged offense and that the complaint fails to disclose such jurisdiction. The complaint alleges in substance that on September 11, 1941, in Portland, Oregon, the defendant caused a criminal proceeding to be instituted by swearing to an information of felony before Julius Cohn, magistrate and ex-officio justice of the peace of the city of Portland, charging plaintiff with committing the crime of grand larceny; that thereafter said defendant caused a warrant of arrest to be issued by said Julius Cohn pursuant to said information of felony and caused plaintiff to be arrested in Portland on September 14, 1941; that plaintiff was confined to jail in Portland upon his arrest; that on September 19, 1941, in a preliminary hearing before said Julius Cohn, the plaintiff was discharged and the proceeding terminated; that the defendant, in instituting and prosecuting such proceeding, acted maliciously and without probable cause; and that plaintiff was innocent of the crime charged against him by the defendant. There are appropriate allegations of damage.

The defendant says that, since the proceeding was in a court of inferior jurisdiction and the complaint does not allege that the judgment was "duly given or made" (which would suffice under § 1-904, O. C. L. A.) it was incumbent upon the plaintiff to state with particularity the facts which would show that the magistrate had jurisdiction to issue the warrant and examine into the charge, and it is argued that this pleading is insufficient because it does not allege that the information was duly verified as is required by § 26-1501, O. C. L. A., nor that the name of the complaining witness was endorsed on the information in accordance with the requirement of § 26-1217, *ibid.*, nor that there was a

compliance with § 26-1504, *ibid.*, which provides as follows:

"When complaint is made to a magistrate of the commission of a crime, he must examine the informant on oath, and reduce his statement to writing, and cause the same to be subscribed by him, and also take the depositions of any witnesses that the informant may produce in support thereof."

■ We will not determine the question of jurisdiction because we are of the opinion that, even though the magistrate lacked jurisdiction, as contended, the complaint nevertheless states a cause of action for malicious prosecution. There is a conflict of authority "upon the question of the correct procedure where the court in which the original proceedings were instituted was without jurisdiction; some hold that in such circumstances trespass, and not case, is the proper remedy, while others take the view that an action on the case for malicious prosecution will lie notwithstanding the court's want of jurisdiction, provided the proceedings were malicious and unfounded." 34 Am. Jur., Malicious Prosecution 713, § 21. There is a like conflict in the decisions of this court.

The case of *Nally v. Richmond*, 105 Or. 462, 209 P. 871, holds that where the complaint, which was challenged by demurrer, failed to allege facts showing that the magistrate who issued a search warrant had jurisdiction, since it was not shown that the requisite affidavit had been made, a cause of action for malicious prosecution was not stated. The court distinguished the case from "that class of cases supported by numerous authorities to the effect that where an affidavit is filed by the defendant in an action for malicious prose-

cution he cannot protect himself by pointing out defects in the affidavit'' (p. 469).

The later case of *Shaw v. Moon*, 117 Or. 558, 245 P. 318, 45 A. L. R. 600, was likewise concerned with a search warrant and want of jurisdiction in the magistrate because of the failure to make and file an affidavit. A ruling of the lower court sustaining a demurrer to the complaint was reversed. There were two defendants—the magistrate who issued the search warrant and the individual who procured its issuance. The court construed the complaint as stating a cause of action for malicious prosecution. Much of the opinion is devoted to the question of the liability of a judicial officer in this character of case—a matter with which we are not here concerned. As to the other defendant it was held that he would be liable ''if it were established as alleged that he acted maliciously and without probable cause, and there has been an abandonment of the proceedings'' (p. 565). A distinction from *Nally v. Richmond* was suggested, but a careful examination of the two opinions leads to the conclusion that they involved identical questions, and that, in so far as the case of *Shaw v. Moon* deals with the liability of the defendant who set the proceeding in motion, it is in conflict with *Nally v. Richmond*. See *Wright v. White*, 166 Or. 136, 150, 110 P. (2d) 948, 135 A. L. R. 1.

This somewhat unsatisfactory state of our own decisions has led us to re-examine the question. The basis of the doctrine that an action for malicious prosecution will not lie where the court which issues the process acts without jurisdiction, seems to be that, historically, malicious prosecution is an action on the case in which the injury complained of is consequential, not direct.

And so it is reasoned that, where the proceedings under which a person is arrested are unlawful and irregular, although taken before a judicial officer, there is an act of direct violence for which the remedy is not case, but trespass, or, as it is commonly called, false imprisonment. Applying this theory in a case where the original proceedings were void because the complaint charged no crime known to the law, the court said in *Maher v. Ashmead*, 30 Pa. St. 344, 72 Am. Dec. 708: "The injury was no more consequential than if caused by a blow from a bludgeon." And in *Allen v. Greenlee*, 13 N. C. 370, the court, in making a like distinction between a direct and consequential injury, said that the action of malicious prosecution or case "is given because trespass will not lie".

On the other side of the question a leading case is *Morris v. Scott*, 21 Wend. 281, 34 Am. Dec. 236. The court there considered it no objection to the action that neither the justice to whom the complaint was made nor the court before whom the plaintiff was tried had jurisdiction of the matter and said that, "taking the authorities together, they give a decided countenance to an action on the case, though there may be a total want of jurisdiction, provided the *malice* and *falsehood* be put forward as the *gravamen*, and the arrest or other act of trespass be claimed as the consequence. This case, therefore, as it stood at the common law, seems properly set down by Mr. Chitty as presenting a right to elect between case and trespass. 1 Chit. Pl. 127, Phil. ed. of 1828."

A like result has been reached by holding the plaintiff estopped to deny that there has been a legal prosecution. *Finn v. Frink*, 84 Me. 261, 24 Atl. 851, 30 Am. St. Rep. 348; *Dennis v. Ryan*, 65 N. Y. 385, 22 Am. Rep.

635; *Williams v Venmeter*, 8 Mo. 339, 41 Am. Dec. 644. These were cases in which the complaint initiating the proceedings charged no crime, but they may be deemed authority in the present discussion, for, as observed in *Hotel Supply Co. v. Reid*, 16 Ala. App. 563, 80 So. 137, the questions of want of jurisdiction and failure to state a crime ''are categorically the same, for it is manifest that a complaint or indictment that charges no offense is impotent to confer jurisdiction.'' We take it that the court in this statement had reference, not to a case of technical inaccuracy in charging a crime, but to a case where no crime whatever is alleged.

■■ The remedy by action on the case is still preserved, and, by analogy to the exercise of the powers conferred upon the clerks in chancery and Parliament by the statute of Westm. 2, 13 Edw. I, ch. 24, § 2, it is employed by the courts in cases whose facts do not fall into the pattern of any other well defined cause of action. See, for example, *Cash v. Garrison*, 81 Or. 135, 138, 158 P. 521; *Kaller v. Spady*, 144 Or. 206, 214, 10 P. (2d) 1119, 24 P. (2d) 351. We still call the action of malicious prosecution an action on the case, just as we call false imprisonment an action in trespass. The two are governed by different rules of substantive law, but here we are dealing with a matter purely procedural, and, where one chooses to seek redress on account of the malice and falsehood of another in bringing about his arrest and prosecution, we see neither reason nor justice under our modern system of pleading in denying him that right simply because of a theoretical distinction, not always easy to perceive, between a direct and a consequential injury. Whether the court, whose process was used to injure the plaintiff, has jurisdiction

or not, the malice and the want of probable cause and the injury are the same. " * * * the sting of all these kind of actions is *malice* and *falsehood,* and injury done in pursuance thereof", *Smith v. Cattel,* 2 Wils. 376. So far as questions of this sort are concerned, we think that we are no longer confronted with the difficulty "of distinguishing under the common-law practice between trespass and case": *Minneapolis Threshing Machine Co. v. Regier,* 51 Neb. 402, 406, 70 N. W. 934. We hold, therefore, that want of jurisdiction in the magistrate or other judicial officer who issues the process is no bar to an action for malicious prosecution where all the elements essential for the proof of that tort are present. This conclusion accords not only with sound principle but, we believe, with the weight of authority as well. Among many decisions and authoritative texts which support it attention is called to the following: *Antcliff v. June,* 81 Mich. 477, 45 N. W. 1019, 21 Am. St. Rep. 533, 10 L. R. A. 621 (dictum); *Apgar v. Woolston,* 43 N. J. L. 57, 58; *Bell v. Keepers,* 37 Kan. 64, 14 P. 542; *Beuthner v. Ellinger,* 90 Wis. 439, 63 N. W. 756; *Calhoun v. Bell,* 136 La. 149, 66 So. 761, Ann. Cas. 1916D, 1165; *Climax Dairy Co. v. Mulder,* 78 Colo. 407, 242 P. 666; *Crawford v. Ryan,* 5 Sadler (Pa.) 205, 7 Atl. 745; *Dennis v. Ryan,* supra; *George v. Williams,* 26 Ariz. 91, 222 P. 410; *Hotel Supply Co. v. Reid,* supra; *Humphrey v. Case,* 8 Conn. 101, 20 Am. Dec. 95; *Lueck v. Heisler,* 87 Wis. 644, 58 N. W. 1101; *Mask v. Rawls,* 57 Miss. 270, 272; *McIntosh v. Wales,* 21 Wyo. 397, 134 P. 274, Ann. Cas. 1916C, 273; *Minneapolis Threshing Machine Co. v. Regier,* supra; *Morris v. Scott,* supra; *Nelson v. Hill,* 30 N. M. 288, 232 P. 526; *Potter v. Gjertsen,* 37 Minn. 386, 34 N. W. 746; *Robinson v. Gordon,* 61 Mont. 124, 127, 201 P. 573; *Shaul v. Brown,* 28

Iowa 37, 4 Am. Rep. 151; *Stancliff v. Palmeter,* 18 Ind. 321; *Stone v. Stevens,* 12 Conn. 219, 30 Am. Dec. 611; *Strehlow v. Pettit,* 96 Wis. 22, 26, 71 N. W. 102; *Sutor v. Wood,* 76 Tex. 403, 13 S. W. 321; Note to *Ross v. Hixon,* 46 Kan. 550, 26 P. 955, 26 Am. St. Rep. 123, 127, 129, 12 L. R. A. 769; Blackstone (Lewis' Ed.), Book 3, p. 1124; 1 Cooley on Torts (3d Ed.) 344; Newell on Malicious Prosecution 29, § 22; 34 Am. Jur., Malicious Prosecution 714, § 21; See notes, 2 L. R. A. (N. S.) 1100, 50 L. R. A. (N. S.) 230.

There is language in *Nally v. Richmond* which seems to indicate that jurisdiction to entertain the prosecution is a *sine qua non* of the action. But the decision itself can be explained as resting on the ground that the defendant had not in fact instituted the prosecution, for the defendant made no affidavit as the basis for securing the issuance of the search warrant, and the court said:

"For all that appears, the justice *sua sponte* possibly after consulting the sheriff, issued a warrant and the plaintiff would now make the defendant responsible for the erroneous conception of his official duty by the justice of the peace." (105 Or. 469)

■■ It is not held in any of the cases above cited that a mere oral request to a magistrate to issue process will be deemed the institution of prosecution. There must be something at least approaching compliance with the formality which everywhere, under our system of law, accompanies the commencement of criminal proceedings. In this regard we think the following is a correct statement of the law:

"The best rule and the one followed by the greater number of courts is that an action on the

case for malicious prosecution will lie where it is shown that a prosecution was prompted by malice and was without probable cause, and a 'colorable cause' or a 'colorable invocation of jurisdiction' is shown. 'By a colorable cause or colorable invocation of jurisdiction', as applied to cases of this kind, it is meant that some person apparently qualified to do so has appeared before the justice and made his complaint under oath and in writing, stating at least some fact or facts which enter into and may under some conditions or in co-operation with some other unstated fact or facts constitute a criminal offense, or stating some fact or facts which bear some general similitude to a fact or facts designated by law as constituting an offense." 34 Am. Jur., Malicious Prosecution 714, note, citing *Hotel Supply Co. v. Reid*, supra, and *George v. Williams*, supra.

On this branch of the case we conclude that, so far as *Nally v. Richmond* seems to hold that the action of malicious prosecution will not lie unless the magistrate had jurisdiction to entertain the proceeding, it is disapproved, and that even though it be true that the complaint here fails to disclose that all the jurisdictional steps were taken—a question which we do not decide—it is not for that reason insufficient.

■■■ The defendant urges, however, that there is no averment in the complaint that the information of felony was duly verified. The complaint alleges that the defendant instituted the criminal proceedings "by swearing to a certain information of felony before Julius Cohn, Magistrate, etc.". It is not alleged in terms that the defendant signed the information, but the answer does so allege, and, as we construe the reply, this allegation is not denied by the plaintiff and therefore aids the complaint. *Siverson v. Clanton*, 88 Or. 261, 268, 170 P. 933, 171 P. 1051; *Lauderback v. Multnomah County*,

111 Or. 681, 688, 226 P. 697. Taking the pleadings together, there is the equivalent of an averment that the defendant verified the information. See, *Ashley v. Wright*, 19 Oh. St. 291, 296; *Marshall v. State*, 116 Neb. 45, 215 N. W. 564; *Agricultural Bond & C. Corp. v. Courtenay F. Co-op. Ass'n.*, 64 N. D. 253, 251 N. W. 881; *S. B. McMaster, Inc. v. Chevrolet Motor Co.*, 3 F. (2d) 469, 471 (Dist. Court, E. D. South Carolina). It was not necessary, as the defendant contends, that the complaint set forth the substance of the verification. It is true that *Fones v. Murdock*, 80 Or. 340, 157 P. 148, holds that an allegation that a criminal complaint was "duly verified as required by law", was a mere conclusion of law, but in that case the complaint was to all intents and purposes challenged by demurrer, and, moreover, it was necessary for the plaintiff to plead and prove that his conviction of a crime had been secured by the defendant's perjury, and it was in view of that requirement that the court ruled as it did. As already stated, the defendant in the instant case filed no demurrer, but chose to reserve his attack upon the complaint until the trial, and we are not, therefore, to give the pleading a strict construction. *Siverson v. Clanton*, supra. The allegation, in our opinion, was sufficient and the proof fully sustained it.

■ It is also contended that the complaint, to be sufficient, should have alleged that the magistrate complied with the requirement of § 26-1568, O. C. L. A., that if it appear after the hearing that no crime has been committed, or that there is no sufficient cause to believe the defendant guilty thereof, he "must order the defendant to be discharged, by an indorsement on the warrant, signed by him, to the following effect: 'There being no sufficient cause shown to believe the

within-named A B guilty of the crime within mentioned, I order him to be discharged.' '' The briefs of counsel do not make clear the precise point of this contention. If, however, it is intended to be argued that the accused was not discharged and the prosecution not terminated because the indorsement was not made on the warrant by the magistrate, we think that the objection is wholly without merit. It is said in 34 Am. Jur., Malicious Prosecution 771, § 114, that ''an allegation that the plaintiff was by order of the court discharged from custody and from prosecution on the charge against him sufficiently discloses a termination of the proceeding favorably to the plaintiff.'' Substantially, the allegation of this complaint measures up to that standard and is, we think, sufficient. See, *Tyler v. Upchurch*, 31 Ga. App. 599, 121 S. E. 521.

■ By objections to the evidence and motions for a nonsuit and directed verdict, questions were raised on the trial and are urged here respecting other alleged irregularities in the proceedings in the criminal prosecution. With one exception these objections, if valid at all, would only be so because proof of jurisdiction of the magistrate was essential to maintenance of the action, and, since we have determined that question adversely to the defendant, there is no reason for a more specific reference to them.

■ The exception relates to the order made by the magistrate at the conclusion of the preliminary hearing. After reciting the appearance of the plaintiff before the magistrate on a charge of grand larceny the order continues, ''and the said Alvie Kuhnhausen having been duly heard by me, and upon such hearing, said case was dismissed on the grounds of insufficient evidence.'' It is argued that this is not an order of

dismissal, but merely a certificate that an order of dismissal had been made at some previous time. It must be conceded that the document is very carelessly drawn, but it is entitled a "judgment" and we have no doubt that it was intended as such and that its effect was to terminate the proceedings favorably to the plaintiff.

■ It is also contended that there is no evidence that Julius Cohn was a justice of the peace and that the court will not take judicial knowledge of that fact. Justices of the peace are state officers in the judicial department of this state (*Webster v. Boyer*, 81 Or. 485, 159 P. 1166; *State v. Beveridge*, 88 Or. 334, 171 P. 1173), and the municipal judge of the city of Portland is ex-officio a justice of the peace. *In Re Application of Boalt*, 123 Or. 1, 260 P. 1004. It was said in the case last cited, at p. 14 of 123 Or. and p. 108 of 260 Pacific:

> "The government functions of the municipal judge of the City of Portland pertain to the sovereignty of the state, and such judge acting as an ex-officio justice of the peace is acting as a state officer."

The statute provides that the following facts, among others, are assumed to be already known to the court:

> "The accession to office, and the official signatures and seals of office of the principal officers of government in the legislative, executive, and judicial departments of this state, and of the United States" (Subd. 5, § 2-502, O. C. L. A.).

■ We think that a justice of the peace comes within the foregoing provision. It is argued that "it would require some imagination, indeed, to classify a justice of the peace as one of the principal officers of government." We do not think that the word "principal" in the statute has reference to the grade of the officer or that, in the case of judges, it is intended to include

only the most exalted. At any rate a justice of the peace is as important as a notary public, and it has been held that a notary public is a state officer and that the court will take judicial notice of his accession, his official seal, and his continuance in office: *Butts v. Purdy*, 63 Or. 150, 125 P. 313, 127 P. 25. It was said in the specially concurring opinion of the present chief justice in *Fehl v. Martin*, 155 Or. 455, 479, 64 P. (2d) 631, that the court will take judicial knowledge of the accession to office of the warden and deputy warden of the state penitentiary. The same is true of the membership of the State Board of Medical Examiners: *State v. Lee Chue*, 130 Or. 99, 279 P. 285. While acting as a justice of the peace the municipal judge of the city of Portland is to all intents and purposes a state officer, and as such he is included within the provisions of the section of the statute above quoted.

One of the grounds of the motion for a directed verdict was that the defendant acted under the advice of counsel and of a deputy district attorney for Multnomah County.

There is evidence of the following facts: From the latter part of December, 1940, until June 8, 1941, the plaintiff was a tenant in a furnished house in the city of Portland owned by the defendant. On June 4, 1941, the defendant commenced an action of forcible entry and detainer against the plaintiff, who was delinquent in his payment of rent, and on June 7th obtained an order for the restitution of the premises. On June 8th the plaintiff vacated the house, leaving the key with a neighbor, but he left no forwarding address. Later on the same day the defendant went to the house and discovered that a number of articles of household equipment, which he testified were in the house when the

plaintiff took possession, were missing. It is these articles which are the subject of the larceny charge afterwards preferred by the defendant against the plaintiff. Subsequently, the defendant learned that the plaintiff was living in a logging camp near Molalla, Oregon, and went there to see him, but, not finding him, left word with his son that he must return the stolen articles and pay the delinquent rent within ten days. In the meantime he had consulted his attorney, A. M. Esson, and laid the facts before him. After the ten days had expired he again consulted Esson, and the latter, according to his testimony, advised the defendant "to forget the rent proposition and if it seemed there was a possibility of securing the goods and imposing the law, if that was all his incentive we would consider that proposition." Esson further advised the defendant that the facts "would be the basis of probable cause to believe, and think, a crime had been committed", and "I would advise you to lay the matter before the District Attorney." The defendant thereupon interviewed Deputy District Attorney Work at the police station and laid the case before him, and Work wrote several letters to the plaintiff which were not answered, and finally, on September 11, 1941, Work wrote out the information of felony which the defendant signed and swore to, and the arrest of the plaintiff followed.

Work was called as a witness by the plaintiff, and, among other things, testified that the defendant informed him that his attorney had advised him that a complaint should issue and "that he had witnesses that would testify as to the taking and the possession after leaving the premises of the articles mentioned." Esson, on the other hand, testified that he did not ad-

vise the defendant to sign the information charging the plaintiff with the crime of grand larceny, and the defendant admitted that this was true; while Work testified that at the preliminary hearing no witness swore that the plaintiff took the defendant's property, and there is no evidence that the defendant knew of any persons who could have so testified.

It is said in *Hess v. Oregon Baking Company,* 31 Or. 503, 515, 49 P. 803:

> "The rule seems to be that where one seeking in good faith the advice of a public prosecuting officer about the commencement of a criminal prosecution, discloses to such officer all the facts and circumstances within his knowledge, or which he has reasonable ground to believe, relating to the offense, and is advised by that officer to institute the prosecution, his defense of probable cause will be established if he acted in good faith upon such advice, even though there were other exculpatory facts which he might have ascertained by diligent inquiry. He is bound to make a full and fair disclosure of all the material facts within his knowledge; and, if he has reason to believe that there are other facts bearing upon the guilt or innocence of the accused, he must either disclose that belief to the prosecuting attorney, or himself make inquiry to ascertain the facts in relation to the matter, but more than this he is not required to do."

To the same effect see *Putnam v. Stalker,* 50 Or. 210, 217, 91 P. 363. Substantially, the rule is no different where the party seeks advice from his own counsel. *White v. Pacific Tel. & Tel. Co.,* 162 Or. 270, 280, 90 P. (2d) 193. All the authorities agree that in order to make out this defense it must appear that the defendant "made a full, fair and honest statement of all the material circumstances of the supposed guilt which

are within his knowledge": Newell on Malicious Prosecution, 311; 34 Am. Jur., Malicious Prosecution 747, § 71. It is also essential that the defendant must have acted in good faith upon such advice *(Hess v. Oregon Baking Company,* supra), and that the specific proceeding complained of shall have been advised by counsel *(Duval Jewelry Co. v. Smith,* 102 Fla. 717, 721, 136 So. 878; 34 Am. Jur., Malicious Prosecution 754, § 80). It is said in the last cited case:

"The advice of counsel cannot be sought or secured as a shield from a feigned action for malicious prosecution or as a cloak to hide malice, but it must be sought in good faith, with the sole purpose of being advised as to the law."

In view of the testimony which had been quoted, the court properly denied the motion for a directed verdict, for the jury could have found that the defendant falsely represented to the prosecuting officer that his attorney had advised him to prosecute the plaintiff and falsely informed him of the existence of the material witnesses to the plaintiff's guilt when there were none. In other words, it would have been a legitimate inference from the evidence that the advice of the public prosecutor was not sought and acted upon in good faith.

The court instructed the jury upon the law with respect to the advice of counsel in accordance with the principles announced in *Hess v. Oregon Baking Company,* supra. The court then told the jury:

"Now in this answer there are a number of circumstances and statements made by the defendant, and certain proof has been offered here in support of those allegations, as to the causes that impelled him to believe—so he contends—that the

plaintiff here was guilty of taking the property, and he mentions some here—not hearing from him, not leaving any forwarding address, and all those things that I am not going into again here, but I am simply going to say this to you, that in determining whether those different matters—whichever way you find the facts to be—constituted a defense or probable cause, depends on whether you believe an honest, prudent person would come to that conclusion, one way or the other, from those facts and circumstances.

"It is not my duty to say that the facts are in relation to the matters I am alluding to there, but in determining whether or not those facts—whatever you find them to be—would give probable cause one way or the other, you should take as the standard there, what an ordinarily prudent person would believe, acting honestly under the same or like circumstances.

"Our Supreme Court has put the duty on the trial judges to tell you of probable cause and what is probable cause. But reasonable persons might differ and draw different conclusions honestly from a certain state of facts, and one person might think certain circumstances established a certain fact, possibly, and another person not think so at all. Personally—in some of these matters—I feel it is for you to say whether or not they did constitute reasonable and probable cause for causing the arrest of someone, because I believe persons might honestly differ on such a matter, and the law is well settled, that so long as there may be an honest difference of opinion, that is what juries are for, to determine the matters of fact in relation to that."

 It is a firmly established rule in this state that in actions for malicious prosecution the question of probable cause is a question of law which the judge must decide upon established or conceded facts. If none of

the facts are in dispute, the court must decide the case without the intervention of a jury; but, if the case cannot be so decided, it must go to the jury with instructions from the court that certain facts, if found by them to exist, do or do not constitute probable cause; and it is not competent for the court to give to the jury a definition of probable cause and instruct them to find for or against the defendant according as they may determine that the facts are within or without that definition. *Hess v. Oregon Baking Company,* supra; *Timmins v. Hale,* 122 Or. 24, 38, 256 P. 770, and cases there cited.

The instruction above set forth was manifestly in conflict with the law as announced in these decisions, prejudicial, and ground for reversal. Its effect was to leave to the jury the whole question of determining, not only the facts, but also the law, that is to say, whether those facts constituted probable cause. The defendant did not take an exception to the instruction, but the error is one appearing on the face of the record which we are authorized to take notice of by Rule 2 of the rules of this court. We deem this a case in which the error should be noticed. The instruction must necessarily have misled the jury. It was self-contradictory, and at least tended to contradict other instructions given by the court. It is evident, moreover, that an exception would not have served one of its main purposes, which is to afford the court an opportunity to correct its error *(Lee v. Hoff,* 163 P. 374, 392, 97 P. (2d) 715). Actions for malicious prosecution are not favorites of the law. In this case the issue as to whether the defendant was actuated by malice and had no probable cause to prosecute the plaintiff for grand larceny, is a close one upon the evidence. The

verdict was substantial—$1500.00 compensatory damages and $1500.00 punitive damages; the error went to the core of the case; and the judgment, in our opinion, should not be permitted to stand.

■ The defendant submitted a requested instruction which recited the substance of all the evidence upon which he relied, and concluded by advising the jury that if they found the facts accordingly they should find that the defendant had probable cause for the prosecution and should return a verdict in his favor. The court refused to give the instruction, and the ruling is assigned as error. We think the request was properly refused. It is not necessary to set out the instruction at length. Among other matters it recited that the defendant had notified the plaintiff's son to tell the plaintiff that the defendant wanted the alleged stolen property to be returned in ten days and that he would wait ten days for its return and the payment of the rent; that he informed his attorney, A. M. Esson, of all the facts and asked for his advice, and that his attorney advised him that there was probable cause to believe that a crime had been committed by the plaintiff and that defendant should submit said circumstances to the district attorney; and that the defendant did submit the case to Deputy District Attorney Work, the instruction then going on to recite the substance of the defendant's transactions with the prosecuting officer. The request concludes by stating, among other things, that if the jury should find "that the defendant honestly and reasonably believed said facts to be true, or entertained a strong and honest suspicion that said facts were true and acted upon, etc." It would seem to be entirely obvious that an instruction so framed could not with propriety have

been given, since it made the question of probable cause dependent, among other things, upon whether or not the defendant honestly believed that he had given the message to plaintiff's son, and honestly believed that he had consulted his attorney and consulted the deputy district attorney, and that the district attorney had written certain letters, etc. While the question whether the defendant had made a full disclosure to his attorney and the deputy district attorney was material upon the question of probable cause, certainly it was of no importance whether the defendant honestly believed or entertained a strong and honest suspicion that he had done these things.

The defendant assigns as error the court's refusal to give the following requested instruction:

"The burden of proof in this case is upon the plaintiff and the jury ought to presume that the defendant believed in the truth of the information and evidence given by him and his witnesses, which defendant had in mind when he signed the said information, and all of the statements contained in the information, unless it thoroughly appears from a preponderance of all of the evidence that the evidence of the defendant was false, and that the defendant knew it to be false, or by reasonable diligence could have ascertained it to be false."

We think that the request was properly refused because it was misleading. To tell the jury that they "ought to presume that the defendant believed in the truth of the information, etc." would be very much like an argument in favor of the defendant—almost, indeed, a direction to decide the case against the plaintiff. Neither would it have been proper to instruct the jury that it must "thoroughly appear" that "the evidence of the defendant was false." This would be

314

to put a heavier burden on the plaintiff than the law requires. He need only establish his case by a preponderance of the evidence. It is true, as counsel for the defendant say, that this instruction (with the exception that it substitutes ''thoroughly'' for ''clearly'') is set out in Newell on Malicious Prosecution at p. 581, and appears to have been approved in *Ross v. Innis,* 26 Ill. 260, 275. Notwithstanding this, the instruction, in our opinion, is subject to the criticisms which we have made of it, and, even though to have given it would not constitute reversible error, it certainly would not be error to refuse to give it in that form.

There are other assignments of error, but none with sufficient merit to call for discussion. The judgment is reversed and the cause remanded for further proceedings in conformity to this opinion.

Petition for rehearing denied May 23, 1944

On Petition For Rehearing

(149 P. (2d) 108)

LUSK, J.

A petition for rehearing filed by the plaintiff takes issue, not with our holding that the court below erred in submitting to the jury the question whether certain facts constituted probable cause, but with our decision that the judgment should for that reason be reversed. It is said that the facts relied on by the defendant Stadelman, even if they existed, did not constitute probable cause for two reasons: First, that there was no evidence which would justify him in believing that the plaintiff Kuhnhausen had committed grand larceny; and, second, that the conduct which Stadelman be-

lieved Kuhnhausen to be guilty of did not constitute under the common law or, under an existing statute, the offense charged against Kuhnhausen; and it is concluded that, had the trial resulted in a verdict for the defendant, the judgment would have been reversed for error in submitting to the jury the question of probable cause at all. If these propositions can be maintained we were, of course, in error when we reversed the judgment for the plaintiff and remanded the case for a new trial.

 As the basis for their argument counsel quote the following from Vol. 3, Restatement of the Law of Torts, Ch. 29, § 662:

> "One who initiates criminal proceedings against another has probable cause for so doing if he
> "(a) reasonably believes that the person accused has acted or failed to act in a particular manner, and
> "(b) (i) Correctly believes that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused, or
> (ii) mistakenly so believes in reliance on the advice of counsel under the conditions stated in § 666."

We accept the foregoing as a correct statement of the law. We also concur in comment (i) under this section, *id.*, p. 408, which speaks of the circumstances which may require investigation by an accuser before he will be justified in commencing a criminal prosecution, and in the proposition that good faith in the accuser is not sufficient, but it must be faith grounded on facts "which in the judgment of the court would make his faith reasonable"; *Director General v. Kas-*

*tenbaum,* 263 U. S. 25, 68 L. Ed. 146, 44 S. Ct. 52; *Stone v. Stevens,* 12 Conn. 219, 30 Am. Dec. 611.

The question, then, is whether there were facts known to Stadelman, or reasonably believed by him, which gave him reasonable grounds, without any further investigation than that which he made, to believe that Kuhnhausen had committed the crime charged against him. For an examination of that question we will state the evidence in somewhat more detail than in the original opinion.

Kuhnhausen was tenant of a furnished house owned by Stadelman. He took possession on December 28, 1940. Two days before, Stadelman had made a check of the furnishings and ascertained that the property afterwards claimed to have been stolen was in the house. This property consisted of the following items: One spray pump, one electric motor and belt, two bed mattresses, one bed spring, one garden hose and nozzle, cooking utensils and dishes. Kuhnhausen became delinquent in his rent, and on June 4, 1941, Stadelman commenced an action of forcible entry and detainer, and on June 7, obtained an order for the restitution of the premises. On June 8 the plaintiff vacated the house, leaving the key with a neighbor, but he left no forwarding address. Stadelman went to the house at 5:00 o'clock on June 8. A new tenant was in possession, and he informed Stadelman that Kuhnhausen had vacated the premises at 2:00 o'clock that afternoon. Stadelman looked over the house and discovered that the articles in question were missing. On that evening he reported the matter to the police. The police asked him if he knew the address of the party who had lived in the house, and, when Stadelman answered in the negative, he was told that he should take it up with

his attorney or the district attorney. Stadelman consulted his attorney, A. M. Esson, the following day and told him the facts. Esson advised him to get in touch with Kuhnhausen. Stadelman endeavored to find out where Kuhnhausen lived from the neighbors and at the store where the latter had traded and from relatives of Kuhnhausen whom he located, but he was able to get no information. He did nothing further until June 26, when he recalled that Kuhnhausen had once told him that he worked at Molalla. He proceeded to Molalla, and, after inquiry, learned that a man of the name of Kuhnhausen was working in a lumber camp southeast of Molalla. He proceeded there and waited for Kuhnhausen to come in from the day's work. Kuhnhausen did not appear, but Stadelman saw Kuhnhausen's son and left a message with the son to tell his father that he wanted the stolen articles returned and the rent paid, and that he would give him ten days to return the stolen articles. The following day, June 27, Stadelman reported this occurrence to Mr. Esson. Nothing further was done until July 10. Not having heard from Kuhnhausen, Stadelman on that day again saw his attorney, who advised him to see the deputy district attorney, and that, in his opinion, Kuhnhausen was guilty of grand larceny. Stadelman then saw Thomas G. Work, deputy district attorney for Multnomah County, related the facts to him, and gave him Kuhnhausen's address at Molalla. On July 24 he again saw Work, who told him that he had written a letter to Kuhnhausen, had received no reply, and the letter had not been returned. On August 7 he again saw Work, who again told him that he had not heard from Kuhnhausen nor had his letter been returned, and he gave Work a new address for Kuhnhausen at Canby,

Oregon. On August 15 he reported to Esson that the deputy district attorney had written letters to Kuhnhausen and had not heard from him. He waited until September 11 when he again saw the deputy district attorney, who told him that he had written a letter to Canby but still had no answer, and that the letter had not been returned. The deputy district attorney then wrote up the information of felony, which Stadelman signed and swore to. Kuhnhausen's arrest and imprisonment followed. Kuhnhausen did not deny that he had received the message from his son, or the letters from the prosecutor.

■ Taking all these facts to be true, we are of the opinion that they constituted probable cause for the prosecution. Suspicion under these circumstances would naturally be directed to the former tenant, the person last known to be in possession of the property, and, even though the immediate initiation of criminal proceedings might have been deemed precipitate and unjustified, yet when it became apparent to Stadelman that Kuhnhausen was avoiding him and the prosecuting attorney and refusing to make an explanation (and the evidence would support such a finding), then, after a consultation with his attorney and receiving his advice, we think that he had reasonable grounds for believing that Kuhnhausen had committed the offense charged.

■ If he erred in his judgment and Kuhnhausen was in fact innocent, his mistake was of the sort described in the Restatement, *id.*, Comment g, p. 407 :

"A third type of mistake occurs when the accuser, having no personal knowledge of the actual conduct of the accused, knows or is credibly informed of circumstances which lead him mistakenly

to believe that the accused has acted or failed to act in a particular manner. Whether such knowledge or information is enough to give the accuser probable cause for initiating criminal proceedings depends upon whether the inferences of fact which he draws from the data before him are such as a reasonable man would draw.''

█ It is argued, however, that the facts in the existence of which the defendant claims to have believed do not in any event constitute a crime and that the case, therefore, does not measure up to the requirement of the first subdivision of (b) in the rule above quoted from the Restatement. At most, it is said, there was but a conversion for which only a civil action would lie, and, indeed, not even a conversion, because Stadelman made no demand for the return of the property. We think that this contention is lacking in merit, even though it be conceded that the evidence does not sufficiently show a demand. Where conversion by a bailee is charged no demand is necessary when there has been ''a possession maintained in violation of one's contract, an unfulfilled promise to return the goods, a diversion of property from the special purpose for which it was received'': 65 C. J., Trover and Conversion, 43, § 56. And see 6 C. J., Bailments, 1154, § 128. *Jeffries v. Pankow,* 112 Or. 439, 223 P. 745, 229 P. 903, cited by the plaintiff, is not in conflict with the foregoing doctrine.

Kuhnhausen's only lawful possession of the goods in question was as a tenant of Stadelman; when that relationship terminated and he vacated the house his duty was to leave the goods there, and if instead he knowingly took them with him or otherwise disposed of them his act was wrongful and amounted to a conversion. Under the facts assumed Stadelman had

reasonable grounds for believing that Kuhnhausen had converted his property knowingly and feloniously.

It is true that the crime in that case would not be grand larceny, as charged in the information on felony, but larceny by bailee: § 23-524, O. C. L. A. But, in preferring that charge, there is evidence that the defendant was advised by his attorney that the crime was grand larceny and that the deputy district attorney was of the same opinion; his mistake of law, therefore, in that regard would be protected: § 662, Restatement, id.; 34 Am. Jur., Malicious Prosecution, 736, § 52, 748, § 71; *Climax Dairy Co. v. Mulder,* 78 Colo. 407, 416, 242 P. 666; *Nettleton v. Cook,* 30 Idaho 82, 87, 163 P. 300, L. R. A. 1917D, 1194.

Among the cases cited in support of the petition for rehearing are several in which it was held that the evidence failed to show probable cause, and it is said that these cases are in point here. We do not so regard them, and think that they are all clearly distinguishable. In *Hutchinson v. Wenzel,* 155 Ind. 49, 56 N. E. 845, the defendant had charged the plaintiff with selling him a forged note. He relied altogether on the statement of the supposed maker of the note that it was a forgery. This was a man whom he did not know and who lived in a different community. The plaintiff, confronted with the charge, gave a circumstantial account of the execution of the note, offered to give double security for it until its integrity could be established, and named four residents of the place where both parties lived who knew all about the transaction. Without making any further investigation, and notwithstanding the advice of the chief of police to the contrary, and without advising with the prosecuting attorney who was present, the defendant signed an

affidavit charging the plaintiff with uttering a forged note and brought about the plaintiff's arrest. It was under these circumstances, which seem to us to be obviously unlike anything in the case at bar, that the court held that there was no probable cause for the prosecution, saying:

> "The belief of an accuser counts for nothing when carelessly or recklessly formed upon a single item of information, if it be shown that he failed to inquire into other reasonable and convenient sources pointed out to him that would have established the innocence of the accused. There must be real, honest belief and reasonable grounds upon all the appearances after such investigation as a prudent person would make under the circumstances of the case, to afford a justification."

*Hazzard v. Flury*, 120 N. Y. 223, 24 N. E. 194, grew out of the delivery of some rugs by the defendant to the plaintiff under an agreement that, when called on so to do by the defendant, the plaintiff would return the rugs in good order or the cash or a properly signed lease for the same. A dispute which arose resulted in an agreement that the defendant should receive in full settlement $36.25 in money and thirteen Smyrna 30-inch rugs. The plaintiff paid the money in two installments, and, at the time of the last payment, gave an excuse for failure to deliver the rugs and promised that he would do so in a few days. Two or three hours before this the defendant swore to a complaint charging the plaintiff with appropriating one of the rugs embraced in the settlement. A warrant for the plaintiff's arrest was issued, but was not served for several weeks thereafter. When the plaintiff paid the last installment the defendant did not tell him that he had sworn to the complaint. Before the war-

rant was served the plaintiff delivered to the defendant thirteen rugs, which he claimed to be in strict fulfillment of the contract. The defendant refused to receive them because they were not, he claimed, in accordance with the agreement. The ground of the court's decision that there was no probable cause to believe the plaintiff guilty of larceny was that, under the agreement made in settlement of the dispute, the plaintiff had the right to the possession of the rug which he was charged with stealing.

In *Parli v. Reed*, 30 Kan. 534, 2 P. 635, it appears that the defendant paid the plaintiff money on a contract for building a home, and became suspicious that plaintiff had spent the money instead of paying it to employees and material men. The defendant initiated a prosecution for embezzlement. It was held that there was no crime, and consequently no probable cause to believe that the plaintiff had committed a crime, because it was the plaintiff's own money.

The holding in *Necker v. Bates*, 118 Iowa 545, 92 N. W. 667, is, as counsel say in their brief, correctly stated in the first syllabus as follows:

> "Where, on vacating the rented premises, a tenant left a harness in a barn thereon, which the landlord afterwards said he would not deliver unless legal proceedings were resorted to, the law furnishes an adequate civil remedy, and a prosecution for theft of the harness is not justified."

The court said:

> "There is nothing in the record before us on which to justify such proceedings. Had a demand been made for the harness and same followed by a refusal, the law afforded a civil remedy wholly adequate to ascertain and enforce the rights of the parties."

Although the court did not expressly so state, it is apparent that there was nothing in the facts to justify an inference of a felonious intent on the part of the plaintiff in refusing to turn over the harness.

The last of these cases cited by counsel is Turner v. O'Brien, 5 Neb. 542. It does not appear to be contended that the facts of this case resemble those in the instant case, but it is cited for the proposition that mere conversion of property without the *animus furandi* is no ground of probable cause nor for belief in the guilt in the party. A judgment for the defendant was reversed because the court instructed the jury in effect that, if they found that the plaintiff had converted to his own use the property of the defendant, and the defendant had been informed of the fact, and that the information was of such a character as to warrant a man of ordinary prudence in believing the plaintiff guilty of the offense charged, and, if the man did so believe, he would not be liable. The grounds of the decision were that the court erroneously left to the jury the question of probable cause and that the instruction omitted the element of felonious intent. We think that the case was correctly decided, but see nothing in it which conflicts with the views which we have announced here and in our former opinion.

The foregoing review of the cases claimed by the plaintiff to be in point on the facts seems to us to reveal the following distinguishing features: In *Hutchinson v. Wenzel,* supra, the accuser rashly relied on information which he was not justified in accepting as trustworthy and refused to avail himself of other obvious means of ascertaining the truth; in the other cases the accuser had no grounds for believing that a crime had been committed either, because, under the

facts as known or believed by him, the charge could be nothing beyond appropriating property to the possession of which the plaintiff was entitled *(Hazzard v. Flury,* supra); or embezzling one's own money *(Parli v. Reed,* supra); or because nothing in the known or believed facts warranted an inference of felonious intent on the part of the one accused *(Necker v. Bates,* supra). None of these defects appear in the case at bar, if the defendant's testimony is to be accepted as true, and we are, therefore, of the opinion that the authorities cited do not support the plaintiff's position.

The contentions urged in the petition for rehearing were suggested in the original brief of the plaintiff, though with not so much elaboration. They were not discussed in our former opinion, as, perhaps, they should have been. Counsel have presented them with ability, but, as we are unable to take their view of the application of the principles of law insisted upon, the petition will be denied.