Argued July 11, reversed and remanded October 24, 1974

LAMPOS, *Respondent, v.* BAZAR, INC., *Appellant.*

527 P2d 376

*Edward H. Warren,* Portland, argued the cause for appellant. With him on the brief were Hershiser, Mitchell & Warren, Portland.

*Joseph F. Ceniceros,* Portland, argued the cause for respondent. With him on the brief were Bailey, Doblie and Bruun, Portland.

TONGUE, J.

This is an action for malicious prosecution of an employee of the defendant who was arrested and charged with stealing two tires from its store in Medford. The jury returned a verdict in favor of the plaintiff for $20,000 general damages and $17,500 punitive damages. Defendant appeals from the resulting judgment.

Defendant's principal assignment of error is that the trial court erred in denying defendant's motion for a directed verdict upon the ground that plaintiff had failed to prove that the criminal proceeding was initiated by the defendant without probable cause.

*Summary of the evidence.*

On June 1, 1971 Murray Falk, defendant's "supervisor for security," went to Medford to investigate reports of "violations of security" by employees at one of defendant's stores. Upon arrival in Medford he and Glynn Allen, manager of the store, went to the

Medford Police Department to ask for assistance. Detective Sergeant Glen Johnston was given that assignment.

Apparently the first person interviewed by Mr. Falk was Leo Galati, who worked with plaintiff in the automotive section of the store. According to Falk, Mr. Galati told him that "he had observed merchandise being removed from the store by Mr. Lampos with the assistance of Mr. Wilson." Mr. Galati was not called as a witness by either party and was apparently unavailable.

The next day Mr. Falk talked to Allen Mayo, plaintiff's immediate supervisor. According to Falk, Mr. Mayo said that he had not authorized Mr. Lampos to take merchandise from the shop and pay for it later and also said that Mr. Lampos "informed him that he had a special deal worked out with Mr. Wilson" as the result of which Mayo paid Lampos $19.95 for a blender for which the retail price was $26. A statement signed by Mr. Mayo was offered in evidence. In that statement Mayo admitted selling tires and other items for which no payment was made at the time of the sale and admitted forgetting over a weekend to put into the till money received from the sale of other tires. The statement also admitted purchase of the blender from Lampos. Mr. Mayo was also not called as a witness by either party and was apparently unavailable.

Mr. Falk next interviewed Mr. Wilson, another employee. According to Falk, Mr. Wilson told him that "he had given Mr. Lampos merchandise without benefit of payment." A copy of a statement signed by Wilson was received in evidence to the effect, among

other things, that Wilson gave to Lampos without payment a blender, a mixer and a stuffed dog.

Mr. Wilson was called as a witness by the plaintiff and testified that at the beginning of that interview Mr. Falk said that he had signed statements from employees saying that Wilson was responsible for missing merchandise and cash; that Falk also accused him of lying on his employment application and said that Wilson could not support his five children on his "net" salary of $139 per week without "stealing in order to survive" and also told him that for him to allow discounts to employees was "the same as stealing." Mr. Wilson testified that he did not tell Mr. Falk that Mr. Lampos was a "thief," but had said that he "had given him [Mr. Lampos] merchandise" and "had sold to John Lampos certain merchandise at a discount." Mr. Wilson testified, however, that he made it clear to Falk that by giving merchandise to Lampos and other employees he was referring to giving discounts to them; that these items were sold at a discount, not stolen; and that it was common practice to sell items to employees at a discount.

On June 3, 1971 Mr. Falk and Mr. Allen interviewed the plaintiff. On the previous evening Mr. Wilson had called him and had told him that he was "suspected." According to Mr. Falk, plaintiff said that he had paid for the stuffed dog, but admitted that "he had a set of recap tires that he hadn't paid for but that he had been given authorization by Mr. Mayo to use them and pay later"; that there was then some conversation about paying for the tires, in the course of which plaintiff said that he was willing to pay at the same discounted price that he would pay "down

the street" to another dealer, but that if Falk wanted the tires he could have them. He and plaintiff then went to plaintiff's house, where plaintiff removed the tires from one of 10 cars at plaintiff's home.

At no time during that interview or visit to plaintiff's home did plaintiff contend that he had already paid for the tires, either in full or in part, much less that he had a receipt or any other proof that he had purchased the tires and had made a down payment on them.

Plaintiff testified that Mr. Falk's attitude during the interview was "very harsh" and "accusatory"; that Falk said that he had eyewitnesses who had seen Lampos take merchandise from the store and presented him with a written "confession of a sort," which he refused to sign, and that as a result of Falk's conduct he was "rather rebellious."

Mr. Lampos also testified that Falk asked "if he could have the tires back and I offered to pay him off," but at a "discount price." He also testified that Mr. Falk asked him directly if he had paid for the tires and that he said "No, I haven't paid for them yet," and that he did not tell Falk that he had paid $5 down on the tires, although he knew that Falk was investigating the theft of the two tires.

Plaintiff testified, however, he told Mr. Falk that "I was buying them [the two tires] on credit and that I had the O.K. of Allen Mayo." He also testified that at the time of that interview he forgot about a receipt that he had in his wallet that showed that on May 6, 1971 (four weeks prior to the interview) he had paid $5 as a down payment on the tires because he was "rather frightened at the time" at the thought

of going to jail and "didn't think about it until after I was in jail."

Mr. Falk and Mr. Allen then concluded the investigation the next day by talking again to Mr. Mayo. Falk testified that the reason they went back to talk with Mr. Mayo was "to ask Mr. Mayo whether or not, in fact, he had given any permission or authorization for merchandise to be taken from the shop by Mr. Lampos or * * * to take merchandise and pay for it later"; that Mr. Mayo's reply was "an emphatic 'no,' " and Mayo also said that "he did not know about the two tires and had not given permission to Mr. Lampos to remove the tires and pay later." Mr. Falk testified that he believed Mr. Mayo even though Mayo was also being investigated.

Mr. Allen, who was present, testified that at the time of that interview "Mr. Falk asked Allen Mayo if he had given permission to John to purchase two tires on credit, or take two tires, and Mr. Mayo said he knew nothing about it, he had absolutely not given any permission," and that he had no reason to doubt Mayo's answer at that time. Mr. Allen also testified, however, that in asking that question he "didn't tie it down with Mr. Mayo as to any particular time when the tires went out," or "the place or value" or "number of tires," but asked only "if he had given John permission to take some tires."

Mr. Falk admitted that the transaction between Lampos and Mayo, as testified to by Lampos, was similar to other transactions in which it was discovered upon investigation of Mayo that he had "pocketed" money paid to him for goods sold by him at a "discount." As previously stated, Mayo had also signed a statement admitting the sale of other tires

without receiving payment at the time of the sale. Plaintiff also offered the testimony of another witness, the husband of an employee, who said that he had made discount purchases from employees at the store and that discount sales to employees was a common practice.

After the second interview with Mr. Mayo, Mr. Falk, Mr. Allen and Detective Johnston went to the district attorney, Mr. Justin Smith. In addition to talking to Mr. Smith a police report by Detective Johnston was given to him to read. Mr. Smith testified that he could not recall "specifically what information" was given to him, but that he recalled reading the police report and discussing it with Detective Johnston; that he "had the information that the tires had been taken by Mr. Lampos; and according to the police report and what the people in my office told me, they had been taken illegally" and that "he had taken the tires without paying for them * * * and that there was no record of any purchase by him."

There was no evidence, however, that any investigation had been made at that time to find out whether or not there was any record of any such purchases by plaintiff. Also, the police report was not offered in evidence. It appears, however, that the report included some statement to the effect that "the arrangement was to pay for them later" and that plaintiff admitted taking the tires from the store, but denied stealing them.

Detective Johnston testified that "to the best of his knowledge" there "was a full disclosure made from what [he] could hear at that time," without stating details of the conversation. Neither Mr. Falk nor Mr. Allen attempted to testify to any of the specific facts

as communicated by them to the district attorney as the result of their investigation. Falk testified, however, that he did "discuss fully with the District Attorney what [his] investigation had disclosed up to that point" and that he relied upon the advice of the district attorney.

At the conclusion of that meeting, District Attorney Smith told Mr. Falk and Mr. Allen "that in my judgment, there was sufficient information to justify the issuance of a District Attorney's Information," which was then prepared by his office and signed by Mr. Allen, the store manager. At the time District Attorney Smith authorized the issuance of that Information neither he, nor Mr. Falk nor Mr. Allen had any knowledge that the plaintiff would contend that he had in his possession a receipt showing payment of $5 as a down payment or deposit on the tires. Mr. Allen testified that if he had known that plaintiff claimed to have made a $5 deposit for the tires he would not have sworn out the Information.

Plaintiff was then arrested and held in jail until he was bailed out. A preliminary hearing was held, at which plaintiff produced, for the first time, a copy of the receipt for payment of $5. Mr. Falk and Mr. Allen testified that they then made an effort to find the original copy of that receipt, but they were unable to do so. They also testified that they doubted the authenticity of plaintiff's copy, which was almost illegible, but were unable to prove that it was not authentic.

The case was then submitted to the grand jury, which returned an indictment against plaintiff for larceny of the two tires. Both Mr. Falk and Mr. Allen testified before the grand jury and were told by the

deputy district attorney to tell the jury, in narrative form, what their investigation had revealed and "any knowledge" that they had. It appears, however, that neither of them told the grand jury about the copy of the receipt which plaintiff claimed to show that he purchased the tires and made a down payment of $5.

The indictment was subsequently dismissed by a deputy district attorney after consulting District Attorney Smith "for the reason that further investigation reveals insufficient evidence, and the state would be unable to sustain a successful prosecution."

1. *Denial of motion for directed verdict—sufficiency of evidence.*

■■ Actions for malicious prosecution are not favored by the law because public policy requires that those who have good reason to believe that the law has been violated should be encouraged to bring that information to the attention of the law enforcement authorities, to the end that those guilty of crime may be brought to trial and punished. *Hess v. Oregon Baking Co.,* 31 Or 503, 513, 49 P 803 (1897), and *Nally v. Richmond,* 105 Or 462, 466, 209 P 871 (1922). For that reason limitations have been placed upon such actions, including the requirement that the plaintiff must sustain the burden of proof that the defendant did not have probable cause to initiate the criminal prosecution. See *Shoemaker v. Selnes et al,* 220 Or 573, 579, 349 P2d 473 (1960), and Prosser, Law of Torts 841, § 119 (4th ed 1971).

We recently discussed the requirement of probable cause in an action for malicious prosecution in *Gustafson v. Payless Drug Stores,* 269 Or 354, 525 P2d 118 (1974). There we stated, among other things,

that for one to have probable cause to initiate a criminal prosecution he must have both a reasonable belief and a subjective belief in the guilt of the accused; that suspicion alone is not enough to constitute probable cause, although certainty is not required and belief beyond a reasonable doubt is not necessary; that the question of probable cause is one to be decided by the court and not by the jury, but that if the facts or inferences are in dispute the court must instruct the jury what facts constitute probable cause and the jury must then decide the facts; and that the question of probable cause "almost has to be decided on an ad hoc basis because of the tremendous number of fact combinations possible."

■ It must also be kept in mind that although the plaintiff has the burden of proof to establish that the criminal prosecution was initiated by defendant without probable cause, in considering the sufficiency of the evidence on that issue on a motion for nonsuit or directed verdict, the evidence must be viewed in the light most favorable to the plaintiff in the event of any conflict in the testimony and the plaintiff is entitled to the benefit of all reasonable inferences from the evidence in his favor. Cf. *Delp v. Zapp's Stores,* 238 Or 538, 542, 395 P2d 137 (1964).

■ After a careful review of the evidence in this case we have concluded that under the facts and circumstances of this case, and depending upon what the jury could have reasonably found to be the facts, there was sufficient evidence to establish that defendant did not have probable cause to institute the criminal prosecution against plaintiff for the felony of larceny.

Despite conflicts in the testimony on other points, the following points appear to be clearly established by the evidence: (1) that plaintiff told Falk and Allen that Mayo, plaintiff's supervisor, had authorized his purchase of the tires on credit, with payment to be made later; (2) that Mayo told Falk and Allen that he had not authorized plaintiff to take the tires; and (3) that Falk and Allen also had a written statement from Mayo to the effect that he had engaged with other employees in transactions similar to the transaction involving these tires, as claimed by the plaintiff.

Defendant cites *White v. Pacific Tel. & Tel. Co.,* 162 Or 270, 281, 90 P2d 193 (1939), in support of its contention that it was entitled to believe Mayo's denial that plaintiff had permission to take the tires, without further investigation. In *White,* however, it was held that although the criminal action involved in that case was based upon information from persons who had been convicted of crime, it was commenced only "after checking up on those statements" in such a manner as to "lead the police and prosecuting officers, as well as the defendants, to honestly believe that plaintiff was guilty."

██ Upon the question whether the making of a further investigation is required in such a case, we adopt the following rule, as stated in Prosser, Law of Torts 842, § 119 (4th ed 1971):

"* * * The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused,

and his opportunity to offer an explanation, and the apparent necessity of prompt action, are to be considered in determining whether it was reasonable to act without seeking verification."

See also Restatement of Torts § 662, Comments *g* and *i.*

■ If defendant had a duty to make a further investigation before having plaintiff arrested, it would follow that in doing so without further investigation defendant acted without probable cause. As previously stated, the question of probable cause is a question of law for the court when the facts are undisputed. Upon application of the test as stated in Prosser to the undisputed facts of this case, as also previously stated, we believe that a reasonable man, acting under such facts as then known to Falk and Allen, would have made a further investigation before causing plaintiff to be charged with a felony.

■ Defendant also contends, however, that "good faith reliance upon the advice of counsel is conclusive of the issue of probable cause," citing *White v. Pacific Tel. & Tel. Co., supra* at 280; *Hess v. Oregon Baking Co., supra* at 515-16; and *Drake v. Anderson,* 215 Or 291, 298-99, 334 P2d 477 (1959), and contends that defendant relied upon the advice of the district attorney after a full disclosure of the facts then known to it; that upon doing so defendant was relieved of any duty to make any further investigation; and that such reliance by defendant required the court to grant its motion for a directed verdict.

Defendant may have relied in good faith upon the advice of the district attorney. The jury could have reasonably found, however, that Mr. Falk, by his

attitude and conduct during the interview with plaintiff, had prejudged plaintiff's guilt and that he did not rely in good faith upon the advice of the district attorney.

Of more importance, we believe, after examining the entire record, that it was properly a question of fact for the jury whether or not Mr. Falk and Mr. Allen made a full and fair disclosure to the district attorney of the facts known to them at that time.

As held by this court in *Kuhnhausen v. Stadelman*, 174 Or 290, 308-09, 148 P2d 239, 149 P2d 168 (1944):

> "* * * All the authorities agree that in order to make out this defense it must appear that the defendant 'made a full, fair and honest statement of all the material circumstances of the supposed guilt which are within his knowledge': * * *."

■ If the jury found that Mr. Falk and Mr. Allen had made such a full and fair disclosure to the district attorney defendant might have been relieved of any duty to make any further investigation of its own. As held in *Hess v. Oregon Baking Co., supra* at 515-16 (as also quoted with approval in *Kuhnhauser v. Stadelman, supra* at 308), and in *Drake v. Anderson, supra* at 297-98:

> "* * * He is bound to make a full and fair disclosure of all the material facts within his knowledge; and, if he has reason to believe that there are other facts bearing upon the guilt or innocence of the accused, he must either disclose that belief to the prosecuting attorney, or himself make inquiry to ascertain the facts in relation to the matter, but more than this he is not required to do. He is not required to institute a blind inquiry to ascertain

whether facts exist which would tend to the exculpation of the party accused. * * *"

See also Prosser, *supra* 843-44, § 119.

Normally, however, it is a jury question whether a full and fair disclosure has been made. *Varner v. Hoffer*, 267 Or 175, 515 P2d 920 (1973), and Restatement of Torts, *supra*, § 666, Comment *g*.

In this case there was no testimony as to what facts were disclosed by Mr. Falk and Mr. Allen to the district attorney, other than the fact that the tires had been "taken" by plaintiff without payment; that plaintiff admitted taking the tires, but denied stealing them, and that there was some statement in the police report about an arrangement to pay for them later. Obviously, any facts providing a source and reason for the disbelief by Mr. Falk and Mr. Allen of plaintiff's denial that he stole the tires were material facts in any full and fair disclosure to the district attorney. See Restatement of Torts, *supra*, § 666, Comment *f*. It does not appear from the record what, if any, such facts were communicated by them to the district attorney.

On this record, the jury could also have reasonably found, among other things, that Mr. Falk and Mr. Allen did not tell the district attorney that the primary source and reason for their disbelief of plaintiff was the denial by Mr. Mayo of any such authorization to plaintiff, but that Mr. Mayo was himself the subject of investigation and had admitted the sale of tires to other persons without payment at the time of such sales, as well as other wrongdoings. For these reasons, we hold that it was a jury question whether a full and fair disclosure was made in this case.

■ Defendant also contends that the binding over of plaintiff to the grand jury after a preliminary hearing and the indictment of plaintiff by the grand jury provided further prima facie evidence of the existence of probable cause, citing *Hess v. Oregon Baking Co., supra* at 505-06; *White v. Pacific Tel. & Tel. Co., supra* at 279-80; *Shoemaker v. Selnes et al, supra* at 581; and *Hryciuk v. Robinson,* 213 Or 542, 551, 326 P2d 424 (1958). Such evidence, however, may be overcome by other evidence. *Hryciuk v. Robinson, supra* at 551. As stated in *Gowin v. Heider,* 237 Or 266, 283, 386 P2d 1, 391 P2d 630 (1964): "* * * The indictment is merely some evidence of probable cause."

The same is true of the binding over of the plaintiff to the grand jury, as held in *Hryciuk v. Robinson, supra* at 554-55.

See also Prosser, *supra,* 846, § 119.

After reviewing the record in this case, we believe that plaintiff offered sufficient evidence which, if believed by the jury, was sufficient to overcome any such prima facie evidence.

It may be that the jury could have found that the binding over of plaintiff for the grand jury, despite the preliminary hearing at which he produced the copy of the receipt for payment of $5, was not only strong evidence that defendant had probable cause to institute the criminal prosecution against him, but was not overcome by evidence offered by plaintiff at the time of trial, based upon the reasoning that if plaintiff were innocent he would have remembered the receipt when he was first interviewed by Mr. Falk. The jury was entitled, however, to believe his testimony that Mr. Falk was so "harsh" and "accusatory" that

plaintiff was frightened and that in his fear of going to jail he forgot about the existence of the receipt until he was in jail. This was one of the questions to be decided by the jury.

■ The primary question on the issue of probable cause, however, was whether, at the time of the institution of the criminal proceedings, the defendant had probable cause to believe that plaintiff had stolen the tires. Information obtained subsequently was not directly material to a decision on that issue. See Restatement of Torts, *supra,* § 662, Comment *f.*

For all of these reasons we hold that plaintiff offered sufficient evidence to establish that defendant did not have probable cause to institute the criminal prosecution against plaintiff, depending upon the facts found by the jury. It follows that the trial court did not err in denying defendant's motion for a directed verdict.

2. *Rulings by trial court on pleadings and instructions.*

a. *Defendant's demurrer to the complaint.*

■ Defendant assigns as error the overruling of its demurrer to the complaint on the ground that it did not allege facts constituting want of probable cause, but only "that defendant acted maliciously and without probable cause for said prosecution." Such an allegation was held by this court to be sufficient in *Hryciuk v. Robinson, supra* at 551, and in *Hess v. Oregon Baking Co., supra* at 506.

b. *Plaintiff's demurrer to defendant's affirmative defense.*

Defendant also assigns as error the sustaining of plaintiff's demurrer to defendant's affirmative de-

fense alleging advice of counsel. The trial court did so upon the representation by plaintiff's counsel that defendant could offer evidence relating to its claim of advice of counsel under its general denial of plaintiff's allegation of want of probable cause. Defendant then proceeded to offer such evidence, which was received without objection by plaintiff.

Advice of counsel is referred to as a defense in our previous decisions. See *Hess v. Oregon Baking Co., supra* at 514; *Kuhnhausen v. Stadelman, supra* at 308; and *Drake v. Anderson, supra* at 297. See also Annot., 10 ALR2d 1215, 1272. There is authority, however, for the proposition that the plaintiff at all times has the burden to establish want of probable cause; that the question of probable cause is a question of law for the court to decide; and that defendant's claim of advice of counsel is not strictly an affirmative defense, but is admissible as evidence on the question whether, as plaintiff must establish, the defendant did not have probable cause to institute the criminal prosecution. See Restatement of Torts, *supra,* § 666, Comment *g.*

■ Even though advice of counsel may not be strictly an affirmative defense, we believe that a defendant who desires to plead that defense may do so provided that, in such an event, the defendant is willing to assume the burden of proof to establish that defense. Because this case must be reversed for other reasons, however, we need not decide whether in this case it was prejudicial error for the trial court to sustain plaintiff's demurrer to defendant's affirmative pleading of advice of counsel.

c. *Instructions on duty to investigate, advice of counsel, binding over to grand jury and disclosure to grand jury.*

Defendant assigns as error the giving of an instruction which, in part, stated that:

"In determining whether there was probable cause to commence prosecution defendant was required to make such investigation as would have been made by a reasonably prudent person in the same or similar circumstances."

■ Defendant contends that the issue was whether it had reasonable grounds to believe that a crime was committed and that "there is no duty to investigate." As previously stated, however, one may have a duty to investigate before causing the arrest of another person if a reasonable person would have done so under the same or similar circumstances, under the rule as stated in Prosser, *supra,* 842, § 119, and Restatement of Torts, *supra,* § 662, Comments *g* and *i.*

As also previously stated, however, we believe that under the undisputed facts of this case, as known to defendant at the time it caused plaintiff's arrest, a reasonable man would have made a further investigation before doing so. For this reason, an instruction leaving that question to the jury was improper in this case.

■ Defendant next assigns as error the giving of the following instruction:

"*If you find that the defendant made an investigation of the kind I have heretofore described to you* and that prior to verifying the written information of Felony the defendant's employees first sought out the advice of counsel and in good faith disclosed all facts within their knowledge to the District Attorney of Jackson County who ad-

vised the defendant that there was legal justification to commence a criminal prosecution against the plaintiff for larceny from a building, *then* if you find that the defendant's employees reasonably and in good faith relied upon that advice in commencing the prosecution, defendant had probable cause to commence such prosecution." (Emphasis added)

Defendant's exception to that instruction was that:

"We further except on page 9 of the written instructions the last paragraph which starts out, 'If you find that the defendant made an investigation of the kind I have heretofore described to you.'

"Except that there is no prior duty to investigate when you have information and rely on the advice of counsel. I think the evidence was clear on that issue that we relied on the advice of counsel and to that extent I don't think you have the duty as far as to investigate."

As previously stated, we have held, as a matter of law, that a reasonable person, under the same circumstances, would have made a further investigation. As also previously stated, however, if a person makes a full and fair disclosure to an attorney and acts upon his advice, such a person may be relieved of any duty to make a further investigation.

This instruction was improper because it gave the impression to the jury that a defendant must always make an investigation before he is entitled to rely upon the advice of counsel. On the contrary, see *Hess v. Oregon Baking Co., supra* at 515, as quoted above. As also stated in Prosser, *supra* at 843-44:

"* * * [T]he defendant must have made full and fair disclosure to the attorney of everything within his knowledge and information which a reasonable man would regard as material for the attorney to know in order to give a sound opinion;

and the failure to disclose any such information, or false statements to the attorney will prevent any justifiable reliance on the advice given. Some courts have gone further, and have required that the defendant use the diligence of a reasonable man to ascertain anything that he does not know before consulting counsel, but the prevailing view, which seems the better one, is that this is unnecessary where he informs the attorney of the state of his information and is assured that he need not seek to learn anything more."

There was no evidence in this case that defendant was "assured" by the district attorney "that he need not seek to learn anything more," and the jury could find from the evidence that defendant failed to disclose to the district attorney "everything within his knowledge and information which a reasonable man would regard as material for the attorney to know in order to give a sound opinion." For these reasons, the jury could have found that defendant was not entitled to rely on advice of counsel.

As previously stated, however, we believe that the instructions gave the impression to the jury that a defendant always has a duty to make an investigation before he is entitled to rely on advice of counsel. The instruction was in error for that reason. An instruction based upon the rule stated in Prosser would have been preferable.

Defendant next assigns as error the giving of an instruction to the effect that if defendant failed to disclose to the grand jury "the pertinent facts known to him as were required in the circumstances," defendant "had no probable cause for continuation of the proceeding from that point on."

Defendant excepted to that instruction on the

ground that there was "no pleading of fraud"; that "failure to disclose facts does not establish lack of probable cause"; and that there was "no evidence that a failure to disclose had anything to do with the return of an indictment by the grand jury."

The obvious purpose of this instruction was to cover the problem resulting from the fact that after the institution of the criminal prosecution against plaintiff the defendant learned that plaintiff had a copy of a receipt which he claimed to show that he paid $5 as a deposit or down payment on the two recap tires and that defendant's Mr. Falk and Mr. Allen apparently made no mention of that fact in their testimony before the grand jury.

■ The subsequent discovery of exculpatory facts does not indicate a lack of probable cause for initiating a criminal prosecution. This was made clear to the jury in this case by other instructions. Nevertheless, one who learns subsequently of such facts and who continues to take an active part in the continuation of a criminal prosecution may, under some circumstances, incur liability for the continuation of a criminal prosecution, regardless of any claim of actual fraud and regardless of "proximate cause." See Restatement of Torts, *supra,* 662, Comment *f,* and § 655.

■ We need not decide, however, whether an instruction on that subject and for that purpose was proper in this case because no exception was made on the ground that plaintiff was not entitled to an instruction on that subject or that, if so, the instruction as given was nevertheless an improper instruction.

The final assignment of error relating to in-

structions was that the court erred in failing to give a requested instruction that:

> "The fact that plaintiff was bound over by a magistrate to the grand jury is not conclusive of probable cause but is prima facie evidence of probable cause. From such evidence you may, but are not required, to find that probable cause existed for the prosecution of the plaintiff."

■ The term "prima facie" is often used, even among lawyers and judges in two senses. See McCormick on Evidence 803, § 342 (2d ed 1972). It is a technical term that may be misunderstood by a jury. As a result, a trial judge is not required to give an instruction which uses that term unless the instruction also explains its meaning to the jury.

In addition, it must be kept in mind that the question whether defendant had probable cause was not an open question to be decided by the jury, as this requested instruction would imply. On the contrary, and as previously stated, the jury is to be instructed what facts will or will not constitute probable cause, in the event that there is a conflict in the facts or different inferences may be drawn from the facts. The binding over of the plaintiff to the grand jury— a fact as to which there was no dispute—was simply one of the factors to be considered by the trial court on this question.

It is true that our previous cases speak of the binding over of plaintiff to the grand jury as prima facie evidence of probable cause. However, as we said in *Hryciuk v. Robinson, supra* at 554, quoting with approval from 1 Harper and James, The Law of Torts 317, § 4.5, n. 21 (1956):

> " 'Since there is a prima facie case of the existence of probable cause to start with (plaintiff hav-

ing the burden of proving its absence), these cases apparently stand for little more than the proposition that such a result of a preliminary examination is a factor to be considered by the judge in determining the question.' "

In addition to the foregoing seven assignments of error, defendant's brief sets forth four additional assignments of error relating to rulings by the trial court in failing to sustain defendant's objections to evidence. Some of such objections may have been well taken. This case must be retried for other reasons, however, and we would anticipate that these problems will not arise again.

Reversed and remanded.