Argued January 3, affirmed as to defendant Rose; reversed as to defendant
Whitbeck March 31; petition for rehearing denied by opinion May 24, 1977
See 278 Or 463

## ROSE, *Respondent,*
### *v.*
## WHITBECK et al, *Appellants.*
### (No. 35-231, SC 24456)

562 P2d 188

Ridgway K. Foley, Jr., of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, and David G. Frost, Hillsboro, argued the cause and filed briefs for appellants.

George E. Birnie, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Holman, Howell, Bryson, Lent, and Bradshaw, Justices.

BRYSON, J.

**BRYSON, J.**

Plaintiff, Betty Rose, brought this action for malicious prosecution against her brother-in-law, Ted Rose, and sister-in-law, Nettie Whitbeck. This action arises out of a family quarrel involving the probate and distribution of assets in the estate of LeRoy D. Rose.[1] Defendants appeal from a judgment entered on a jury verdict in favor of plaintiff.

Defendants contend that the plaintiff failed as a matter of law to prove that the criminal proceedings against plaintiff were instituted by defendants, that defendants lacked probable cause, or that the proceedings were terminated in plaintiff's favor. Defendants maintain that for these reasons the trial court erred in denying their motions for nonsuit and directed verdict.

■ We review the evidence in the light most favorable to the plaintiff. *Lampos v. Bazar, Inc.,* 270 Or 256, 267, 527 P2d 376 (1974).

The evidence when so reviewed reveals the following facts. Joe, Betty's husband, and Nettie were the co-executors of LeRoy's estate. As a result of incidents relating to the management of LeRoy's property prior to his death on March 17, 1973, and the marshalling of the assets of his estate thereafter, animosity arose between Joe and the defendants.

Prior to his death on March 17, 1973, LeRoy gave Betty his 1964 Buick. At the time of the gift, the Buick was registered in the name of Mildred Rose, LeRoy's deceased wife. At LeRoy's request, Betty signed Mildred's name to the title and had it placed in her own name. Testimony was presented from which the jury could reasonably conclude that the title was delivered into Betty's possession by defendant Nettie, and that both defendants were aware that the Buick was a gift

---

[1] LeRoy D. Rose, deceased, was the father of Joe Rose, Ted Rose, Nettie Whitbeck and Catherine Woods. Betty Rose is the wife of Joe Rose. To prevent confusion, these individuals will be referred to by their first names.

prior to May 10, 1973, the date Ted first complained to the sheriff's department in regard to Betty's possession of the Buick.

At Ted's request, Deputy Sheriff Kenneth Engh undertook to investigate Betty's actions. Ted gave Deputy Engh a copy of the title to the Buick, which he had procured from the Department of Motor Vehicles. He also related to the deputy statements made by LeRoy's housekeeper that she had seen Joe removing papers from Mildred's and LeRoy's safe immediately after Mildred's death. Ted did not inform the deputy that the Buick had been a gift from LeRoy to Betty. Deputy Engh learned of the gift characterization of the transaction only when he interviewed Betty the following month.

The information obtained by Deputy Engh was forwarded to District Attorney Robinett. Robinett decided that the matter should be sent to the grand jury and called Ted and Nettie to testify. The district attorney could not remember whether he spoke to Ted and Nettie before or after his decision to present the matter to the grand jury. Both defendants testified that they did not visit the district attorney's office prior to their being called as witnesses before the grand jury. However, Ted did admit to contacting the office several times thereafter to check on the progress of the case.

The grand jury, after hearing the testimony of Ted, Nettie, and Deputy Engh, and after reading the report of Detective Robert C. Phillips, returned an indictment for forgery against plaintiff.

Betty was never brought to trial. After the indictment, the probate court, having jurisdiction over LeRoy's estate, determined the Buick to have been a gift. In view of this adverse determination of the issue critical to the state's case against Betty, the district attorney moved that the indictment against Betty be dismissed. The indictment was dismissed by the court on December 20, 1974.

■■■ Public policy requires that those who have good reason to believe the law has been violated should be encouraged to bring that information to the law enforcement authorities to the end that those guilty of crime may be brought to trial and punished.[2] In order to recover for this tort, the burden is upon the plaintiff to prove each of the following elements: (1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution.[3] If any element is left unproven, plaintiff's case must fail.

■ We review first as to Nettie Whitbeck. Defendant Nettie moved for a nonsuit and directed verdict on the grounds that plaintiff failed to prove that Nettie participated in instituting the indictment. In order to find that Nettie participated in instituting the indictment, plaintiff must prove that Nettie was "actively instrumental in putting the law in force."[4] It is not, however, required that a defendant personally or single-handedly institute the criminal proceeding. A defendant may be held to have satisfied this prerequisite where she has urged or insisted that another institute the criminal proceeding[5] or where due to proof of agency or conspiracy she is made responsible for the acts and conduct of others.

■ As to defendant Nettie, there is no evidence to prove that her brother Ted acted on her behalf or that Nettie conspired with Ted "in putting the law in

[2] *Lampos v. Bazar, Inc.,* 270 Or 256, 266, 527 P2d 376 (1974); *Humbert v. Knutson et al,* 224 Or 133, 140, 354 P2d 826 (1960).

[3] *Humbert v. Knutson et al,* 244 Or 133, 137, 354 P2d 826 (1960); *Hill v. Carlstrom,* 216 Or 300, 304, 338 P2d 645 (1959); *Engelgau v. Walter,* 181 Or 481, 487-88, 182 P2d 987 (1947).

[4] *Gustafson v. Payless Drug Stores,* 269 Or 354, 363, 525 P2d 118 (1973); *Meyer v. Nedry,* 159 Or 62, 78 P2d 339 (1938).

[5] Restatement of Torts § 653, comment f; *see Gustafson v. Payless Drug Stores* and *Meyer v. Nedry, supra* note 4.

force." Plaintiff has also failed to present any evidence that Nettie urged or otherwise insisted that Ted institute a police investigation regarding Betty's possession of the Buick.

The evidence does reveal Nettie and Ted to have been closely allied in the intra-family arguments concerning the estate and that Nettie agreed with her brother's assessment that Betty was guilty of forgery. However, this evidence falls short of showing that Nettie urged her brother to seek a police investigation, or even that she condoned his action in doing so. If Nettie is to be held liable, that liability must be judged solely upon her actions and not upon her brother Ted's actions on his own behalf.

The evidence shows Nettie's only role in Betty's indictment to have been that of a witness called by the grand jury to testify before it. This limited participation is as a matter of law insufficient to render Nettie liable for malicious prosecution. Prosser, Law of Torts (4th ed 1971) § 119 at pages 836-37 explains this as follows:

> "The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause. But he cannot be held responsible unless he takes some active part in instigating or encouraging the prosecution. He is not liable merely because of his approval or silent acquiescence in the acts of another, nor for appearing as a witness against the accused * * * since the necessities of a free trial demand that witnesses are not to be deterred by fear of tort suits, and shall be immune from liability. * * *" (Footnotes omitted.)

See also 54 ALR2d 1289, 1314-315.

In the instant case there is no evidence of perjury. It is argued that Nettie acted improperly in failing to inform the grand jury that the Buick was a gift. But, it should be noted that the role of a grand jury witness is essentially a passive one. Nettie only responded to the questions of the district attorney and the grand jurors.

No evidence was presented that Nettie had any opportunity or duty to make unsolicited disclosure that the Buick was a gift. Plaintiff called Nettie as a witness. She testified:

"Q   Now, did you participate in the signing of the Complaint against Betty for forgery?
"A   No, sir, I did not.

"Q   Did Mr. Engh talk to you regarding it?
"A   I never met Mr. Engh until today."

It follows from what has been said that defendant Nettie's motion for nonsuit or a directed verdict should have been granted. We turn now to the contentions of defendant Ted.

Defendant Ted first contends that, as in the case of his sister Nettie, the trial court should have granted his motions for nonsuit and directed verdict as plaintiff failed to prove that the criminal proceedings were instituted by him. The rule, enunciated by the Restatement of Torts § 653 and adopted by this court in *Humbert v. Knutson et al,* 224 Or 133, 138-40, 354 P2d 826 (1960), is that where the prosecutor, after an independent investigation and in the exercise of his independent discretion, decides to bring criminal proceedings, the defendant will be insulated from liability. This rule contains the limitation that the defendant must have been truthful and did not withhold information in his presentation of the facts to the prosecutor. As we state in *Humbert v. Knutson et al, supra* at 138:

"* * * If pertinent information is withheld or there are misrepresentations made as to the facts, or undue influence brought to bear, there can be no intelligent exercise of the officer's discretion, and the person thus procuring the action of the officer is not insulated from responsibility. * * *"

To the same effect see *Pearson v. Galvin,* 253 Or 331, 337, 454 P2d 638 (1969).

Comment g, Influencing a public prosecutor, § 653 of the Restatement of Torts, explains this limitation as follows:

"If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible and a prosecution based thereon is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to commence the prosecution or that the information furnished by him upon which the official acted was known to be false." 3 Restatement of Torts 386-87, § 653 (1938).

■ Evidence was presented in the instant case from which a jury could reasonably conclude that Ted knew that the automobile had been a gift to Betty. Betty testified that the entire family knew the Buick had been a gift and that Nettie had specifically informed Ted of their father's decision to give Betty the automobile. Since the crime of forgery is in the instant case dependent upon the transfer of title having been fraudulent, there would have been no prosecution if Ted had revealed that he knew the Buick to have been a gift. A jury choosing to believe Betty and not Ted could reasonably conclude that Ted did not make full and truthful disclosure to Deputy Engh, and that this failure to disclose led to Betty's subsequent indictment.

Defendant Ted next contends that a directed verdict should have been granted due to the plaintiff's failure to prove that the criminal proceedings terminated in her favor. Defendant Ted maintains that the indictment was dismissed as a result of compromise by the plaintiff.

■ Dismissal of an indictment at the request of the district attorney is generally sufficient to satisfy the requirement that the criminal proceeding has termi-

nated in the favor of the plaintiff. *Gumm v. Heider,* 220 Or 5, 25, 348 P2d 455 (1960); 3 Restatement of Torts § 659 (1938). An exception is made, however, where the dismissal was pursuant to an agreement of compromise by the plaintiff. *Gowin v. Heider,* 237 Or 266, 279, 386 P2d 1, 391 P2d 630 (1964); 3 Restatement of Torts § 660 (1938). In such cases the dismissal is not indicative of innocence.

■ In the instant case there is no evidence that the accused entered into any compromise. Plaintiff asserted her position that the Buick was a gift throughout the criminal and probate proceedings, until this issue was finally resolved in her favor by the probate court. The evidence further shows the prosecution's decision to move for dismissal of the indictment was unilateral and not the product of any agreement between himself and Betty or between Ted and Betty. The trial court did not err in refusing to grant a directed verdict on this issue.

■ Lastly, Ted argues that a nonsuit or directed verdict should have been granted due to the plaintiff's failure to prove that Ted lacked probable cause for his complaint, or, in the alternative, that his requested instruction on probable cause should have been given. We have discussed this issue in three relatively recent malicious prosecution cases: *Lampos v. Bazar, Inc.,* 270 Or 256, 527 P2d 376 (1974); *Gustafson v. Payless Drug Stores,* 269 Or 354, 525 P2d 118 (1973); and *Varner v. Hoffer,* 267 Or 175, 515 P2d 920 (1973).

In *Lampos v. Bazar, Inc., supra* at 267 we stated:

"* * * [F]or one to have probable cause to initiate a criminal prosecution he must have both a reasonable belief and a subjective belief in the guilt of the accused; that suspicion alone is not enough to constitute probable cause, although certainty is not required and belief beyond a reasonable doubt is not necessary; that the question of probable cause is one to be decided by the court and not by the jury, but that if the facts or inferences are in dispute the court must instruct the jury what facts constitute probable cause and the jury must

[ 799 ]

then decide the facts; and that the question of probable cause 'almost has to be decided on an ad hoc basis because of the tremendous number of fact combinations possible.' "

Mere proof of improper purpose or malice raises no inference that defendant lacked probable cause.

We have also adopted 3 Restatement of Torts § 662, which provides, at pages 403-04, as follows:[6]

"One who initiates criminal proceedings against another has probable cause for so doing if he

"(a) reasonably believes that the person accused has acted or failed to act in a particular manner, and

"(b) (i) correctly believes that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused, or

"(ii) mistakenly so believes in reliance on the advice of counsel under the conditions stated in § 666."

█  In the instant case, the facts relevant to determining whether or not Ted had probable cause are disputed. As has already been discussed, evidence was presented from which the jury could reasonably conclude that Ted knew the Buick to have been a gift. If the jury so found, defendant would, as a matter of law, have lacked probable cause to take his complaint to Deputy Sheriff Engh unless his acts were based upon the advice of counsel. If the Buick were a gift, there could have been no fraudulent transfer and hence there could have been no crime.

Defendant Ted cannot rely upon the safe harbor provided by the Restatement of Torts in § 662(b)(ii), *supra*, as the record presents no evidence that he relied upon the advice of counsel prior to taking his complaint to Deputy Sheriff Engh. Ted's later conversations with the district attorney are insufficient to insulate him from liability as they occurred only after

---

[6] *Varner v. Hoffer*, 267 Or 175, 179, 515 P2d 920 (1973); *Shoemaker v. Selnes*, 220 Or 573, 579, 349 P2d 473, 87 ALR2d 170 (1960); *Kuhnhausen v. Stadelman*, 174 Or 290, 315, 148 P2d 239, 149 P2d 168 (1944).

criminal proceedings had been initiated. Furthermore, the record is absent of any evidence that Ted disclosed to the district attorney that he knew the Buick to have been a gift. Under these facts, the issue of probable cause was properly left to the jury.

█  Defendant Ted's contention that the grand jury indictment constituted prima facie evidence of probable cause has been considered before by this court and rejected. *Lampos v. Bazar, Inc., supra* at 279-80.

Defendant Ted also requested that the following instruction be given to the jury:

> "One who initiates criminal proceedings against another has probable cause for doing so if he, or they, (1) reasonably believes that the person accused has acted or failed to act in a particular manner, and (2) correctly believes that such acts or omissions constitute the offense charged against the plaintiff, or, mistakenly believes that the acts constitute a crime in reliance upon advice of counsel. In this connection, I instruct you that the District Attorney of Washington County can be considered as 'counsel' for this purpose."

Had this instruction been given, it would have added only the defense of reliance upon the advice of counsel to the jury instructions actually given by the trial court. As we have already noted, this defense was not available to Ted under the facts of this case.

Affirmed as to defendant Theodore Rose; reversed as to defendant Nettie C. Whitbeck.